The next case on our calendar for argument is U.S. v. Williams. Good morning. May it please the Court, my name is Tina Schneider and I'm representing the defendant Stephen Williams. The microphone's working now, so. Okay. Mr. Williams was convicted after trial of conspiracy to distribute drugs. We're asking the Court to vacate his conviction because the government engaged in improper witness bolstering and vouching for its cooperating witnesses. At the outset, I acknowledge that we face three major hurdles here. First, the defendant did not object to the introduction of the cooperation agreements into evidence. Second, the defendant did not object to questions about the truth-telling provisions of those cooperation agreements. And third, the defendant did not object to the government's closing or rebuttal. Despite all that, in the circumstances of this case, the government's questioning of the cooperating witnesses and its arguments to the jury constituted plain error. There were three cooperating witnesses here, Lombard, Chavez, and Edwards. With regard to Lombard and Chavez, didn't the trial counsel say that their testimony was believable? Yes, absolutely. And given that statement, and given that Edwards was the only person with really personal knowledge of Williams, why should we even care what the government did with regard to Lombard and Chavez? Why is that even relevant? First off, because this Court has held repeatedly that unless and until a witness's credibility is questioned, the truth-telling provisions of a cooperation agreement don't go into evidence. But wouldn't it be harmless? If you're both vouching for the witnesses and saying that they're being truthful, then why is the government's improper vouching anything other than a harmless error? Here's why I think it is. Because the government was arguing these three guys had to tell the truth because it was in their cooperation agreement. And so we know they're telling the truth here. And so the problem for the defense was the defense wanted the jury to believe Chavez and Lombard, but it's kind of a goose-gander thing where all three had this identical truth-telling provision in their cooperation agreements, and the government is arguing, yes, that makes all three more believable. But as to Edwards, the trial counsel attacked his credibility during opening argument. Exactly. So it seemed to me that that opened, under our precedent, that opened the door to the government's inquiries. Yes, we agree as to that. So Chavez and Lombard are in one category, and Edwards is in another. And so as to Chavez and Lombard, it was error, and we say it was error that severely prejudiced our client for the government to have inquired about the truth-telling provisions in their cooperation agreements. Why? I don't understand that. Why as to those two? Because — Why wasn't it harmless error, as Judge Sullivan's pointed out? Because if those witnesses are telling the truth because of the truth-telling provisions in their cooperation agreement, then ergo Edwards is telling the truth because of the truth-telling provisions in his cooperation agreement. The government's lumping all three together. We're saying no. The harm to us is that Chavez and Lombard are over here and should be believed, not because of this provision in their cooperation agreement. The fact that the truth-telling provision was raised as to them is immaterial as far as their believability is concerned from your perspective. No, it isn't, because — As far as their believability is concerned. I'm not talking about Edwards. As far as — we don't want the jury to engage in this thought process. Oh, we should believe them because they're required to tell the truth, because then the jury's also going to think that about Edwards. There was a credibility charge given. I mean, the jury's going to weigh all sorts of things in determining whether this — whether to believe a witness. It's not just — I mean, there's no showing at all that it was just the credibility — just the truth-telling provision that did it. Well, here's the important point. Thank you. Thank you. Thank you. Thank you.  Thank you. And the drug conspiracy testimony. And so what was plain error here was that, not that the government questioned Edwards about the truth-telling provisions in the cooperation agreement, but what they did with that in their closing argument. And I'd like to just point out five statements that were a flagrant abuse here. In the summation now, or in the cross, or both? In the summation. First, the statement, if they, the cooperating witnesses, lie even once, they don't get their 5K1 letters. There was absolutely no evidence on the record that said that or even from which that could be inferred. And in fact, that comment is not about the witnesses' expectations. It's all about the government. If they lie, we're not giving them their 5K1 letter. It tells the jury, we know when there's lying and we know what the truth is. And we have integrity. So that statement is all about the government. Well, wait. If they lie even once, they don't get their 5K1 letters. And then later it's continued, the cooperators knew that if they lied, they would get caught and they would go to jail for a long time. That's the second statement that I want to focus on. But aren't, I mean, they're in tandem, really, aren't they? They're what? Isn't it really about the incentives to tell the truth or the incentives to lie that the witnesses might have? Here's the problem. It is a leap from saying you must tell the truth or you won't get your 5K1 letter. Because that's misleading, because the reality is if you lie and if the government catches you and if the government chooses to not disregard that lie, then you won't get your 5K1 letter. These are all arguments that can be made and they really sort of were made in summations, right? Well, except you need evidence in order to make statements like this. So there was no evidence that the witnesses knew that if they lied, they would get caught. There was, they had, they had. They had been told that if they lied, the deal would be, their cooperation would be nullified, any agreement they had would be nullified. Well. That's in the cooperation agreement itself, right? Which is in evidence. So what the witnesses testified was, if we get caught lying, no 5K1 letter. But to tell the jury if they lie, no 5K1 letter, presupposes that the government is omnipotent. And omniscient. Yes. Yes, exactly. Omniscient is the word I'm looking for. So you're saying, basically, that these errors were so egregious that they tainted the presentation of the government, and particularly since this was the pivotal issue at trial, right, that even on plain error review, it constitutes plain error. Is that correct? That's right. All right. Very good. We'll hear from the government. Thank you. You have two minutes of rebuttal. May it please the court. My name is Laura Pomerance, and I'm an assistant United States attorney for the Southern District of New York. I represent the United States on appeal, and I also represented the United States in the proceedings below. Stephen Williams was convicted of participating in a narcotics conspiracy after a fair trial. The appellant raises two issues on appeal, both of which are without merit. The government did not improperly bolster the testimony of its cooperating witnesses, and in any event, Williams cannot satisfy his burden of establishing plain error in the admission of the truth-telling provisions of the witnesses' cooperation agreements. But do you concede that you jumped the gun on two of the three cooperators? Your Honor, in retrospect, in light of Judge Schofield's rules and the pre-admission of the exhibits, I think that the government would flag this issue for the court. What does that mean, the pre-admission of exhibits? I mean, if parties want to stipulate, they can stipulate. But there was no stipulation as to the admissibility of the cooperation agreements, was there? Your Honor, Judge Schofield's practice is to pre-admit the exhibits such that the government would flag the truth-telling provisions of the witnesses'   agreements, the government would flag the exhibits. What does that mean under the Federal Rules of Evidence? So my understanding is that if there — that the defendant had an opportunity to object to any exhibits that the government wanted to introduce, and if there were any objections to the — That was not, and for that reason, I think that if we were to do this again, the government would flag this issue. Right. But on the one hand, Williams argues here that his conviction depended on the testimony of the cooperating witnesses whose credibility was crucial to determining guilt. So if that's the case, then the cooperation agreements were properly admitted as he was attacking their credibility. On the other hand, Williams argues that he was not attacking the credibility of Chavez and Lombard, which was a statement made by defense counsel in his summation. But if that's the case, as Your Honors were pointing out, the argument suggests that the jury should credit the testimony of Lombard and Chavez, and as such, testimony regarding the incentives to testify truthfully should not have affected the defendant's substantial rights, and as such, he cannot satisfy the plain error standard. Basically, your adversary is saying that Edwards' testimony was critical, and I think you'd agree with that, that Edwards was really the key witness. Without Edwards, you wouldn't have had a case, right? Edwards was the key witness, Your Honor. Right. So my only question is, there was corroboration of Edwards, wasn't there, individually, by other — by the other witnesses? That's correct. There was corroboration of Mr. Edwards by the other cooperating witnesses, Chavez and Lombard, as well as documentary evidence in the form of storage records and shipping records. About the shipping of the money and the drugs back and forth. Records that showed the shipments between the defendant and — yes, Your Honor. Yes. And so the central feature of the defense's case was attacking the credibility of Patrick Edwards, and so as counsel has conceded, there — it can't seriously argue that it was plain error to allow the government to offer the cooperation agreement of Patrick Edwards and to elicit the truth-telling provisions of that agreement. Now, he — Williams argues that because he did not explicitly attack the credibility of Lombard and Chavez, that the introduction of the cooperation agreements as to Lombard and Chavez constituted plain error. We submit that that is not so. Before Williams attacked the credibility of Chavez and Lombard through cross-examination, Williams cross-examined DEA Special Agent Randall Peters and specifically asked him about the truth-telling provision of the cooperation agreements, including who decides whether the cooperating witness is telling the truth, how many cooperating witnesses get a 5K letter. And so with that questioning, he opened the door to the introduction of questions about the truth-telling provisions of the cooperation agreements. Williams also cross-examined Lombard and Chavez about their understanding of the cooperation agreements, their understanding of who decides whether the cooperating witnesses are being truthful, and then argued in their — in his summation about the incentives of all three witnesses, not just Patrick Edwards' incentives, but he argued about all of their incentives, which he described as an incentive to appease the government not to tell the truth. And so defense counsel stating that Edwards' stories make absolutely no sense whatsoever at every key point when it has to do with drugs or money is an attack on Patrick Edwards' credibility, and therefore is also an attack necessarily on the credibility of Chavez and Lombard, who testified and provided key corroboration about many aspects of the drug operations. Do you think — Was the theory that Edwards was — it was all Edwards and it wasn't Williams? Was that the defense theory, that Edwards was doing this, and therefore their corroboration of Edwards supported the defense case? Your Honor, I think that that was part of the argument. It was largely focused on just that one could not believe Patrick Edwards, and that did not necessarily focus — What is your response, just very briefly, to the five bolstering statements that they're referring to? Your Honor, I — in terms of the errors in the summation, are you referring to? Yes. The reason they're telling the truth, they — you know, if they lie once, they don't get the 5K1 letters and so forth. It's basically built around — several of them built around the 5K1 letter. The government, you know, this Court — You're saying that basically there was testimony at the trial that reflected — that preceded these — you know, that these statements were made in the context of the trial testimony. Yes. The statements about the witnesses — the cooperating witnesses lying once and not receiving their cooperation agreements, their 5K letters, all of this was grounded in evidence that was admitted at trial. It was grounded in the cooperating witnesses' testimony at trial as to their understanding of their cooperation agreements and their incentives to tell the truth. And this Court has routinely rejected similar challenges and has held that it's permissible and proper for the government to explain the witnesses' incentives to tell the truth. So do you think there are any limits on that, though? I mean, in terms of plain error, could the government have said in summation — and they know we're going to catch them because, you know, we're — we follow them, we are — you know, we know a lot about what's going on in the drug trade here, and if they dared to stray from the straight and narrow of the truth, we will punish them accordingly. You know, wouldn't that maybe constitute plain error? Your Honor, I do agree that there are limits. I think that the — How would you describe those limits? Well, I think that the question is whether it's supported by the evidence that's And so here, where the arguments were grounded in the record, particularly of the cooperators' understanding of their cooperation agreements, their incentives under the cooperation agreements, there is no — there cannot be a finding of plain error. And what's the — so what's the evidentiary basis for the assertion that if they lied,  I believe that the evidence is grounded in the record. I believe that the cooperating witnesses testified that they understood that if they lied, they would not get their 5K letters. Right. But what about the getting caught, right? I mean, if you only pay the penalty when you get caught, then what's — what is the evidentiary basis for saying that if they lied, they knew they would get caught? Well, the cooperating witnesses, in particular Edwards and Lombard, testified that they did know that the government had other evidence, but they did not know what evidence the government had beyond what any particular witness had disclosed. And so I think that is part of the basis for making that argument. And throughout the course of its summations, the government reminded the jury that it was its job to evaluate the cooperating witnesses' testimony, their demeanor, the way they answered the questions of both the government and defense counsel, and how they were corroborated. And in any event, the jury was instructed at the beginning of the trial and prior to closing arguments that it had to determine whether witnesses were being credible and in so doing were to consider whether a witness had any possible bias or relationship with any party or possible interest in the outcome of the case. And so here, the government summits that Williams is essentially nitpicking at certain details of the government summation, focusing on small details, which again are statements that did not draw objections at trial. And this nitpicking highlights his failure to meet the heavy burden of establishing severe and significant prosecutorial misconduct that amounts to a flagrant abuse. And this is not the rare case in which the government's summation constituted such severe misconduct that amounts to flagrant abuse. I will rest on our submission unless the Court has any further questions. Thank you very much. Ms. Schneider, you have two minutes. Thank you. Just very briefly, in response to your question, would it be okay for the government to say, to argue to the jury, they know we're going to catch them? That's exactly what the government did here by arguing the witnesses know if they lie, we will catch them. But this was addressed in the defense summation, right? I mean, the defense summation said the only way they get caught is if the government knows what's a lie and if they decide to make a big deal out of it. I mean, that was well developed in the summations, wasn't it? So the problem with the statement, the witnesses know if they lie, they will get caught, and if the witnesses lie even once, no 5K1 letters. Those came in the government's opening closing, initial closing argument. So the defense was only responding to that in its closing. And then I'd like to just point out that there was no corroboration of Edwards as to his naming of the defendant as a participant in the conspiracy. There were shipping documents, but no shipment was ever intercepted. And we had only Edwards' word as to what was in there and whether the defendant knew what was in there. Thank you very much. I thank you. The arguments will reserve decision.